IN THE
UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
WESTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA )<br>)<br>v.     )<br>)<br>KATHLEEN THOMPSON     ) | No. 07 CR 50068-1<br><br>Judge Philip G. Reinhard |

**DEFENDANT KATHLEEN THOMPSON'S SENTENCING MEMORANDUM**

Comes now, Kathleen Thompson, by the Federal Defender Program, Terence F. MacCarthy, Executive Director and Paul E. Gaziano, one of his assistants, and submits the following Sentencing Memorandum in this matter.

**BACKGROUND**

Kathleen Thompson, defendant, has waived an Indictment and entered a plea of guilty to the one-count Information filed against her charging her with the embezzlement of funds belonging to Teamsters Local 325.

Kathleen Thompson is a 48 year old woman born and raised in Rockford, Il. Ms Thompson has no prior criminal record and has led for a long period of time a law abiding life. Ms. Thompson lives in the same house in which she was raised. She presently lives with her husband of approximately 5 years Jeffery Thompson and her son from a prior relationship Scott Shell who is 27 years old. Mr. Shell has a 3 year old daughter the custody of whom is shared with her mother.

Ms. Thompson is a high school graduate and throughout her life has made her family the focal point of her attention. She cared for her mother until her death in 1997. Ms. Thompson started her employment with the Teamsters approximately 18-19 years ago. Her last position was a clerical position where she had responsibility for the "pull-tab" operation at Teamster Hall. Pull-tabs (tabs) are akin to an instant lottery ticket. Her job required Ms. Thompson to order tabs from the supplier, oversee their sale at various events and account for the cash received. As she has admitted, Ms. Thompson would allow a certain person identified in the Plea Agreement as the "Player" to cash checks. Those checks would not be negotiated in the usual course of business. The funds of the tab sales would be used to cover Player's check.

When the officials at the Teamsters became aware of the shortages in the Teamsters Association funds, they began to explore methods of recouping losses. One method was an attempt to return unused inventory of tabs. At this point, Ms. Thompson spoke to her supervisor, the Treasurer, and advised him of her misdeeds. Ms. Thompson subsequently spoke to various members of the Executive Board and its attorney and then to the agents of the Department of Labor. Each time, Ms. Thompson advised the persons with whom she spoke of her criminal act. She also told them that she did not personally profit from this activity.

The Government in its supplement to Official Version opines that whether defendant profited from her misdeeds or was assisting a friend may be a sentencing factor. In coming to a conclusion on that issue, one should look at the consistencies or inconsistencies of the statements and the provable facts. Ms. Thompson for the most

part has been consistent in relating her criminal conduct. Player in her interviews has several inconsistencies and has made some statements which do not fit into the provable facts. By entering into this line of background, Ms Thompson is not contesting her activity or the fact that she ultimately must be responsible for her conduct.

Player when she was initially contacted about this matter told a teamster official that she had given Thompson checks with the instructions not to cash them. On April 13, 2007, Player advised the official that she had recently repaid $4010 with funds borrowed from her life insurance policy. At that meeting on April 13, 2007, Player arrived and was using a walker, something that she had never used before when she played bingo. Player presented a notebook which she alleged contained a list of all checks and amounts supposedly returned to the Teamsters. She noted in that log that she made the $4000 payment on April 9, 2007 and sought credit for another payment on March 15, 2007.

When interviewed on June 19, 2007 by Government agents, Player advised them that the $4000 payment was made with funds withdrawn from a certificate of deposit. Player went on to say that it was then that Thompson went on a cruise and that upon Thompson's return, Player repaid another $1500 to Thompson. That recital of facts is inconsistent with Player's prior statements and also with her own log allegedly showing the schedule of repayment. While it is true that Thompson went on a cruise (funded by the use of timeshare), that occurred in January 2007 several months before the alleged repayment. In response to the Government's statement about the use of the funds, defendant assures this Court that she personally did not profit from this crime.

Ms. Thompson admits her guilt and admits that she provided funds not belonging to her to Player.  She stands before this Court fully prepared to be accountable for her wrongdoing, but she does ask the Court to consider that she did not personally profit from her misdeeds.  She does understand that she did cause the Association to lose money.

## SENTENCING PROCEDURE

In United States v. Booker,543 US 220, 125 S Ct .738 (2005), the Court held that the Sentencing Guidelines were not mandatory, but advisory.  Booker further required the sentencing court to consider all of the factors found at 18 U.S.C. 3553(a) to determine an appropriate sentence.  In Rita v. U.S. 127 S. Ct. 2456 (2007), the Court held that when a sentencing judge's discretionary decision in a particular case accords with the United States Sentencing Commission, a court of appeals may presume the sentence is reasonable. In Gall v. U.S. 128 S.Ct. 586 (2007), the Court held: "A sentence whether inside, just outside, or significantly outside the Guidelines range" is to be reviewed under a "deferential abuse of discretion standard."

The result of the cited cases is that the sentencing court must engage in a 2-step analysis.  The first step being a correct calculation of the applicable Sentencing Guidelines.  The second step being a consideration of the factors of T 18 U.S.C. Sec 3553(a).  In analyzing the sentence , the district court may not presume the Guideline range is reasonable.  See, Rita v. U.S., supra, and Gall v. U.S.  Supra.

In short assuming a proper 2-step analysis, the sentencing court is armed with

complete and unfettered discretion.

## SENTENCING GUIDELINES

Ms. Thompson has reviewed the Guideline calculations of the Probation Officer and enters one objection to the Adjustment for the Role in the Offense pursuant to U.S.S.G. §3B1.3 Abuse of Trust.  That adjustment is not applicable to all embezzlement cases and should not be applicable to this defendant.  Ms. Thompson was not vested with any professional or managerial discretion.  She worked for the Association, but her activities were regulated by the conditions set forth by her superiors or by the independent CPA.  Her superiors were the individuals who directed her that the cashing of larger checks for Player was approved.  Her superiors had access to the safe in which the proceeds of the tab sales were kept; her superiors had access to the room where the tab inventory was kept.  All persons who are entrusted with property are not subject to this adjustment.  Defendant was not given the type of discretion and managerial oversight to cause this adjustment to apply in this case.

## T 18 U.S.C. SEC. 3553(a) Analysis

This statute requires the Court to consider a number of factors prior to imposing a sentence "sufficient but not greater than necessary to comply with the purpose" in paragraph(2).

The Court must initially consider the nature and the circumstances of the offense and the history and characteristics of the defendant.  The offense to which

defendant pleaded guilty is a Class D felony. The maximum term of imprisonment is 5 years no statutory impediment exists which prohibits a sentence of probation. See, 18USC SEC.3561(a)(1). Thus, probation is a sentence which the Court must consider.

The crime of conviction is a nonviolent financial crime. Defendant has no criminal or juvenile record, she can best be described as a person who believed she was helping an individual and who must now account for her criminal conduct. Defendant does not seek to justify her conduct. When it became apparent that the crime was to be uncovered, Ms. Thompson did not flee, she met with her supervisor, she met with members of the Executive Board and she met with investigating agents. This establishes that she has true remorse for her conduct and will do her best to atone fully for her crimes.

Defendant submits that a sentence of probation is an appropriate sentence for her. Such a sentence is permissible under the law. Probation is not a disposition which promotes disrespect for the law. Probation is a sentence which substantially restricts one's liberty. U.S. v. Knights, 534 U.S. 112. Probation to a person who has led a law-abiding life is not a unreasonable alternative. Defendant must live the rest of her life with the shame of a Federal felony conviction. Defendant's background suggests that she will no longer be involved in criminal activity. The public does not need protection from defendant; her conduct in assisting the investigation and assisting the Government establishes that she will not commit future crimes.

Wherefore defendant prays that this Honorable Court after conducting the 2-step analysis and after weighing the sentencing factors, impose a sentence of Probation

conditioned all reasonable conditions the Court deems appropriate.

Dated this 30th day of April 2008 at Rockford, IL

                                        Respectfully submitted;
                                        FEDERAL DEFENDER PROGRAM
                                        Terence F. MacCarthy
                                        Executive Director

                                        By: _____
                                              Paul E. Gaziano
                                            Attorneys for Defendant
                                            KATHLEEN THOMPSON

PAUL E. GAZIANO
FEDERAL DEFENDER PROGRAM
202 W. State Street - Suite 600
Rockford, IL 61101
(815) 961-0800